**UNITED STATES DISTRICT COURT**
**THE DISTRICT OF COLUMBIA**

ROQUE DE LA FUENTE,

Plaintiff,

v.

DONALD J. TRUMP;

DONALD J. TRUMP FOR PRESIDENT, INC.;

REPUBLICAN NATIONAL COMMITTEE;

ALABAMA REPUBLICAN PARTY;

ALASKA REPUBLICAN PARTY;

ARIZONA REPUBLICAN PARTY;

ARKANSAS REPUBLICAN PARTY;

FLORIDA REPUBLICAN PARTY;

GEORGIA REPUBLICAN PARTY;

HAWAII REPUBLICAN PARTY;

KANSAS REPUBLICAN PARTY;

MASSACHUSETTS REPUBLICAN PARTY;

MICHIGAN REPUBLICAN PARTY;

MINNESOTA REPUBLICAN PARTY;

NEVADA REPUBLICAN PARTY;

NORTH CAROLINA REPUBLICAN PARTY;

SOUTH CAROLINA REPUBLICAN PARTY;

TENNESSEE REPUBLICAN PARTY;

VIRGINIA REPUBLICAN PARTY; and

WASHINGTON REPUBLICAN PARTY,

Defendants.

**Case No.**

**COMPLAINT**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. Joseph Stalin once told his private secretary, "I regard it as completely unimportant who in the party will vote and how, but it is extremely important who will count the votes and how."

2. This case is about how the President of the United States, wielding influence and money, decides who can vote, and whose votes will count, to ensure that he wins nomination and re-election as President.

3. President Trump, as is his modus operandi, uses his power to incapacitate political rivals, preferring that to a fair competition on an equal playing field. Through a comprehensive scheme that includes withholding money from objectors, and granting money to cooperators, President Trump, with the aid of the Republican National Committee, has demanded that State Republican Parties cancel primaries or control their outcomes, before a single vote is even cast.

4. The result is abuse of power, corruption, fraud upon the American voter, and direct harm to Plaintiff, Mr. Roque "Rocky" De La Fuente, a conscientious objector to Trump stealing the election.

## PARTIES

5. Plaintiff ROQUE DE LA FUENTE announced that he would run on the Republican Primary nomination in challenge of Donald J. Trump on May 16, 2019. He is a United States citizen, over the age of 35, and a citizen and resident of the State of California.

6. DONALD J. TRUMP ("TRUMP") is President of the United States and a

legal resident and citizen of the state of Florida.

7. DONALD J. TRUMP FOR PRESIDENT, INC. ("the Campaign") is the Reelection Campaign Committee for Donald J. Trump, organized under the laws of the state of Virginia, and headquartered in New York.

8. REPUBLICAN NATIONAL COMMITTEE ("RNC") is the national political committee of the Republican Party and headquartered in Washington, D.C.

9. ALABAMA REPUBLICAN PARTY, ALASKA REPUBLICAN PARTY, ARIZONA REPUBLICAN PARTY, ARKANSAS REPUBLICAN PARTY, FLORIDA REPUBLICAN PARTY, GEORGIA REPUBLICAN PARTY, HAWAII REPUBLICAN PARTY, KANSAS REPUBLICAN PARTY, MASSACHUSETTS REPUBLICAN PARTY, MICHIGAN REPUBLICAN PARTY, MINNESOTA REPUBLICAN PARTY, NEVADA REPUBLICAN PARTY, NORTH CAROLINA REPUBLICAN PARTY, SOUTH CAROLINA REPUBLICAN PARTY, TENNESSEE REPUBLICAN PARTY, VIRGINIA REPUBLICAN PARTY, and WASHINGTON REPUBLICAN PARTY ("State Parties"), are the state political committees of the Republican Party, organized under the RNC in Washington D.C., with their principal places of business in their respective states. Each of these state Republican party defendants are the citizens of their respective states as designated in their name.

10. Defendants RNC and Campaign are alter egos of one another. These Defendants are Alter Egos because they are dominated, influenced, and controlled by one individual (TRUMP), as well as the officers of the Campaign, and the business, property, and affairs of each of the said corporations are one and the same. There exists a unity of interest and ownership between them such that the individuality and

separateness of each of the Defendants has ceased. By virtue of the foregoing, adherence to the fiction of the separate corporate existence of each of the Defendants would, under the circumstances, sanction a fraud and promote injustice.

11. Defendants, and each of them, at all times participated as co-conspirators in the violations alleged herein and performed acts and made statements in furtherance thereof. The acts charged in this Complaint have been done by the TRUMP, or were authorized, ordered, or done by Defendants' respective officers, agents, employees, or representatives, while actively engaged in the management of each of the other Defendants' business or affairs, or in furtherance of the wrongful acts sought to be accomplished by TRUMP, the Campaign, and the RNC.

12. Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged.

## **JURSIDICTION AND VENUE**

13. This Court has subject matter jurisdiction over Plaintiff's Federal claims pursuant to 28 U.S.C. § 1331(a) because this case is a civil action arising under the laws of the United States. This action alleges violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. This Court has supplemental jurisdiction over Plaintiff's state claim pursuant to 28 U.S.C. § 1367(a) because this court has original jurisdiction over related Federal claims and 18 U.S.C. § 1964(c).

14. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a) because this Plaintiff is a citizen of a different state

than all of the Defendants and the amount in controversy exceeds $75,000.

15. This Court has personal jurisdiction over Defendants because the District of Columbia may exercise jurisdiction over Defendants under its long-arm statute as follows:

a. The District of Columbia has personal jurisdiction over RNC as its citizen. (D.C. Code § 13-422);

b. The District of Columbia has personal jurisdiction over TRUMP as a person with an enduring domicile in the District. (D.C. Code § 13-422);

c. The District of Columbia has personal jurisdiction over Defendants because Defendants regularly do or solicit business or engage in a persistent course of conduct, or derive substantial revenue from the District of Columbia, including, without limitation, by conducting business with the RNC and TRUMP and obtaining revenue therefrom. (D.C. Code § 13-422(a)(4));

d. The District of Columbia has personal jurisdiction over Defendants because the liability arises from Defendants transacting business within the District of Columbia, including, without limitation, by conducting business with the RNC and TRUMP; (D.C. Code § 13-422(a)(1)).

16. Venue is appropriate in the District of Columbia, under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to these claims occurred and will continue to occur in this District. Defendant RNC is a resident and citizen of this District and a central coordinator of the jointly wrongful conduct with the State Parties, as alleged herein. TRUMP has a residence in this District and

coordinates with the other Parties the wrongful acts alleged herein substantially from this District.

## FACTS

17. Beginning in December 2018, agents of Defendant DONALD J. TRUMP FOR PRESIDENT, INC. began holding telephone calls with the Chairs of the Republican Parties of all the individual states ("State Chairs"). In these telephone calls, the Campaign told the State Chairs that TRUMP desired that he be unopposed for his nomination as the RNC's candidate for President in 2020.

18. The Campaign created a department of staff devoted to the objective or ensuring that TRUMP had no competition as the 2020 Nominee of the RNC.

19. The Campaign then assumed control over the RNC's operations and merged the RNC's presidential nominee campaign resources with its own. For the first time in U.S. history, the RNC is sharing office space, staff, funding, and operational resources with a candidate's campaign, as though they are one.

20. The Campaign also reviewed all of the rules of the State Parties. Thereafter, the Campaign began to dictate to the State Chairs how each of the State Parties was to revise or enforce their rules to ensure TRUMP's nomination.

21. The Campaign and the RNC share chains of command, officers, and legal advisors. The chain of command is topped by TRUMP, who directs the Campaign and the RNC. TRUMP, the Campaign, and the RNC act as one and the same enterprise ("the TRUMP ENTERPRISE") with the purpose of ensuring that TRUMP has no competition in his bid for re-election as President of the United States.

22. In accordance with TRUMP's wishes, in February 2019, the RNC adopted resolutions that pledged undivided support to TRUMP.

23. TRUMP has dictated to the Campaign and RNC that he does not want any of the State Parties to allow challengers to his nomination in 2020. TRUMP has dictated that State Parties who do not cooperate with this mandate will suffer financial consequences, and that the TRUMP ENTERPRISE will prevent such noncooperative State Parties from receiving financial assistance.

24. In or around September 2019, Defendants ARIZONA REPUBLICAN PARTY, ALASKA REPUBLICAN PARTY, KANSAS REPUBLICAN PARTY, NEVADA REPUBLICAN PARTY, SOUTH CAROLINA REPUBLICAN PARTY, and VIRGINIA REPUBLICAN PARTY cancelled their primaries and/or caucuses, despite knowing that several candidates have stated their intention to seek the RNC's nomination. In or around December 2019, HAWAII REPUBLICAN PARTY cancelled its primary, despite knowing that several candidates have stated their intention to seek the RNC's nomination.

25. In 2019, ARKANSAS REPUBLICAN PARTY set a filing fee for ballot access of $25,000. ALABAMA REPUBLICAN PARTY set a filing fee for ballot access of $15,000. FLORIDA REPUBLICAN PARTY set a filing fee for ballot access of $25,000. HAWAII REPUBLICAN PARTY set a filing fee for ballot access of $10,000. By comparison, the average filing fee for ballot access by State Parties is $1,500. Further, these large fees were not likewise charged to TRUMP or his Campaign.

26. Between October 2019 and December 2019, GEORGIA REPUBLICAN PARTY, MASSACHUSETTS REPUBLICAN PARTY, MICHIGAN REPUBLICAN

PARTY, MINNESOTA REPUBLICAN PARTY, NORTH CAROLINA REPUBLICAN PARTY, and TENNESSEE REPUBLICAN PARTY refused to certify to their respective Secretaries of State and/or Election Divisions any Republican candidates for President besides TRUMP.

27. In 2019, WASHINGTON REPUBLICAN PARTY changed their rules to allow ballot access only by signature of party delegates. Qualified delegates were contacted by the WASHINGTON REPUBLICAN PARTY and instructed not to sign any such petitions, or they would suffer political or financial consequences.

28. In November 2019, Plaintiff, through his campaign agents, contacted the MICHIGAN REPUBLICAN PARTY to inquire about what is necessary to have Plaintiff added to the MICHIGAN REPUBLICAN PARTY's list of Republican candidates for President. The MICHIGAN REPUBLICAN PARTY stated that they were informed by the TRUMP ENTERPRISE that if they included any candidates other than TRUMP, they would lose funding to their party and candidates. MICHIGAN REPUBLICAN PARTY stated that in order to include Plaintiff, they would require a "donation" large enough to cover such funding losses, which they stated would be "more than $100,000" and perhaps even in the millions of dollars.

29. In December 2019, MASSACHUSETTS REPUBLICAN PARTY stated that they had a lot of pressure from the TRUMP ENTERPRISE to not include any primary challengers to TRUMP on the primary ballot.

30. In December 2019, ALABAMA REPUBLICAN PARTY discussed with TRUMP ENTERPRISES the possibility of deleting from the ballot any challengers to TRUMP and keeping the $15,000 filing fee. The TRUMP ENTERPRISE pressured

ALABAMA REPUBLICAN PARTY to remove any challengers to TRUMP and provided advice on how to do so without being obviously controlled by the TRUMP ENTERPRISE, including by denying that they are controlled by the TRUMP ENTERPRISE and that they support TRUMP before any votes are cast, even though they have pledged to support TRUMP already.

31. The RNC and State Parties advertise their primaries and caucuses to the voting public in order to fundraise, increase voter registration to the Republican Party, and support the candidacies in local, state, and Congressional races. The RNC and State Parties have adopted these election procedures voluntarily. The primaries and caucuses adopted by the RNC and State Parties are governed by State and Federal law. The primaries and caucuses are paid for by public funds. The RNC and State Parties claim to hold public elections rather than purely private nomination conventions by choice. The RNC and State Parties do this to obtain a public, political, and financial benefit.

32. The TRUMP ENTERPRISE has influenced and controlled how the State Parties will conduct public primaries and caucuses by using threats of financial losses or political disfavor against noncompliant State Parties and their members. The TRUMP ENTERPRISE has influenced and controlled how the State Parties will conduct public primaries and caucuses by promises of financial transfers and political favors to State Parties that ensure that TRUMP is the only candidate eligible for bound delegates under their respective state laws.

33. The TRUMP ENTERPRISE has promised and/or has transferred financial resources to State Parties who have complied with their demands.

34. TRUMP was aware of, directed, and/or instigated activities by the TRUMP ENTERPRISE, that include the withholding or conferment of money and/or benefits to State Parties and their candidates and officials based on their compliance with his desire that they interfere with, affecting, or control, the nomination of TRUMP as the RNC's candidate for the office of President, without holding a fair and impartial vote at the primaries, despite opting into that system.

35. TRUMP's modus operandi is to use his position of power and authority as President of the United States to withhold or bestow benefits and influence based on whether the subject person or entity is willing to assist TRUMP in goals that are for his personal benefit. TRUMP's modus operandi includes soliciting others to assist in actions that harm his political opponents.

36. TRUMP's behaviors, directly, and through the TRUMP ENTERPRISE, is an abuse of power. TRUMP and the TRUMP ENTERPRISE has bribed, threatened, and interfered with the impartial administration of primary elections. TRUMP and the TRUMP ENTERPRISE intended to defraud the American voters generally, and Plaintiff specifically, with the false promise of an election that TRUMP has already directed be delivered solely to him.

## COUNT ONE

*Prima Facie Tort*

(Against All Defendants)

37. Plaintiff incorporates by reference all preceding paragraphs, as if fully set forth herein.

38. In 1939, Congress passed the Hatch Act, officially titled, "An Act to Prevent Pernicious Political Activities," after an investigation confirmed that officials in President Roosevelt's Works Progress Administration had promised jobs and promotions in exchange for votes. The Federal Hatch Act proscribes corruption in the form of bribing or extorting votes or interfering with an election by a Federal official using the authority of his position. *See* 5 U.S.C. §7323 (describing prohibited political activity by Federal officials).

39. Under the Federal Criminal portion of the Hatch Act, it is a crime for anyone in the Executive Branch, including the President, to "use[] his official authority for the purpose of interfering with, or affecting, the nomination or the election of any candidate for the office of President. . . ." 18 U.S. Code § 595.

40. Black's Law Dictionary defines "Bribery" as "The receiving or offering any undue reward by or to any person whomsoever, whose ordinary profession or business relates to the administration of public justice, in order to influence his behavior, and to incline him to act contrary to his duty and the known rules of honesty and integrity."

41. The Code of Federal Regulations also defines the "Abuse of Power" crime. "A person . . . taking advantage of" official office to "dispossess[] . . . or other infringement of personal or property rights; or Denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity" has committed an abuse of office. 25 C.F.R. § 11.448.

42. The President may be subject to civil suit for unofficial conduct that he commits outside the scope of his official duties. *Clinton v. Jones*, 520 U.S. 681, 693-95

(1997) (no "immunity from suit for unofficial acts grounded purely in the identity of his office"). By its very nature as being criminal, illegal, abusive, and outside the scope of the office, any actions that can be described as "abuse of power," "corrupt," "bribery," "pernicious political acts," or "interfering with elections," is an unofficial act. Lawsuits on state law grounds may proceed against the President without sovereign immunity.

43. TRUMP and the TRUMP ENTERPRISE operate significantly out of the State of New York. TRUMP has properties and businesses centrally located in New York, is frequently a New York resident, and visits New York often. The TRUMP ENTERPRISE, and in particular the Campaign and a portion of the RNC, operate out of New York jointly with TRUMP.

44. New York recognizes a Prima Facie Tort. Under the Prima Facie Tort doctrine, a wrong that does not fit under other traditional categories or tort pleadings is still actionable when the wrongdoer, without justification or excuse, willfully and intentionally causes injury to another. The Prima Facie Tort is meant to address the times when an intentional injury does not have a remedy under usual theories of trespass to property or person, and tracks the proposed Prima Facie Tort as set forth in the Restatement of Torts.

45. TRUMP and the TRUMP ENTERPRISE, with the forced cooperation of the State Parties, intentionally caused, through various corrupt incentives, including coercion and bribery, the State Parties to:

a. cancel primaries and caucuses;
b. refuse to admit challengers to TRUMP on the ballot;

c. charge unjustifiable, extortionate filing fees to challengers of TRUMP without also charging those fees to the TRUMP ENTERPRISE;

d. change rules so that no challengers of TRUMP could reasonably qualify, and pressure delegates and party members to not sign petitions, without also requiring that these rules apply to TRUMP; and

e. binding delegates to TRUMP before any vote could occur, without regard to the fact that the State Parties had opted into a primary scheme for their benefit and had lead the public to believe that the Republican Party holds democratic votes for the Republican nomination.

46. These actions, solicited and required by TRUMP and the TRUMP ENTERPRISE, created a wrongful transfer of wealth to cooperative State Parties in exchange for an interference with a publicly funded and scheduled election, and were in exchange for a promise of delegate votes.

47. TRUMP and the TRUMP ENTERPISE intentionally interfered with the elections in order to ensure that TRUMP would not be factually challenged by any person for the nomination. TRUMP and the TRUMP ENTERPRISE have a modus operandi of using power, funds, and benefits to obtain an unfair advantage over political opponents in an attempt to ensure the re-election of TRUMP in 2020.

48. TRUMP and the TRUMP ENTERPRISE's actions were taken with malice aforethought with respect to Plaintiff. Defendants knew that Plaintiff sought to challenge TRUMP in the primary and specifically sought to block Plaintiff from exercising his rights and privileges to ballot access.

49. As a result of TRUMP's and the TRUMP ENTERPRISE's intentional,

illegal, corrupt, and immoral actions, Plaintiff was effectively blocked from being on the ballot on fourteen states to date, including: Alabama, Alaska, Arizona, Georgia, Hawaii, Kansas, Massachusetts, Michigan, Minnesota, Nevada, North Carolina, South Carolina, Tennessee, Virginia, and Washington.

50. In addition, the Republican Parties of Alabama, Arkansas, and Florida, each charged extortionate fees to the detriment of Plaintiff, in a "pay to play" scheme, for ballot access. When Plaintiff paid to ALABAMA REPUBLICAN PARTY, agents of the Party and/or the TRUMP ENTERPRISE then sought to remove Plaintiff from the ballot and keep the fee, only to be deterred on threat of litigation for fraud.

51. The Michigan Republican Party sought but did not obtain an extortionate pay-to-play fee of over $100,000 from Plaintiff, resulting in denying him access to the ballot. The Michigan Republican Party admitted that they were pressured by threats and promises of money from the TRUMP ENTERPRISE.

52. The TRUMP ENTERPRISE so thwarted Plaintiff's ability to exercise his right to engage in a free political contest with TRUMP, that Plaintiff has lost hundreds of thousands of dollars attempting to pay the party fees, comply with their changing rules, obtain signatures from petitioners, and to engage lawyers and media professionals to comply with demands from State Parties, all of which were intended to result in loss to Plaintiff. These acts irrevocably damaged Plaintiff's campaign.

53. As the direct and proximate cause of Defendants' intentional and wrongful acts, Plaintiff suffered Special Damages in an amount to be proven at trial, but no less than $1,000,000.

**COUNT TWO**

*Racketeer Influenced Corrupt Organizations Act*

(Against All Defendants)

54. Plaintiff incorporates by reference all preceding paragraphs, as if fully set forth herein.

55. Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

56. The TRUMP ENTERPRISE is an association-in-fact within the meaning of 18 U.S.C. § 1961(4). The TRUMP ENTERPRISE is an ongoing organization that functions as a continuing unit. The TRUMP ENTERPRISE was created and used as a tool to effectuate Defendants' pattern of racketeering activity.

57. The TRUMP ENTERPRISE falls within the meaning of 18 U.S.C. § 1961(4) and consists of a group of "persons" associated together for the common purpose of: harassing, threatening, extorting, and paying State Parties to guarantee a number of delegate votes to TRUMP, including by engaging in wrongful acts such as canceling primaries, changing their rules and filing fees solely for challengers, creating pay-to-play schemes, and binding delegates to TRUMP without holding a vote. Further, the TRUMP ENTERPRISE concealed their activities and evidence to prevent the public and candidate knowledge of such wrongful activities.

58. Defendants conducted and participated in the affairs of the TRUMP ENTERPRISE through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5), which upon adequate discovery from Defendants, may include, but is not limited to, witness intimidation or harassment, destruction of

evidence, bribery, mail and wire fraud, and the interstate transfer of money related to fraudulent or unlawful activities.

59. The TRUMP ENTERPRISE engaged in and affected interstate commerce, because Defendants contracted with each other and with multinational corporations to carry forth their election and campaign activities nationally.

60. Within the TRUMP ENTERPRISE, and between Defendants, there was a common communication network by which co-conspirators shared information on a regular basis. Through the TRUMP ENTERPRISE, the Defendants and their co-conspirators functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes.

61. Defendants used the mails and wires for the transmission, delivery, or shipments as a part of Defendants' illegal scheme. Mail and wires included: (a) Contracts and communications between Defendants and third parties complicit in aiding their scheme to prevent Plaintiff from participating in the election; (b) Wires and payments among the defendants and third parties; (c) Emails and telephone calls between Defendants and third parties complicit in aiding their scheme to prevent Plaintiff from participating in the election

62. Defendants utilized the interstate and mail and wires for the purpose of obtaining money or property by means of the omissions, false pretenses, and misrepresentations described herein. Defendants also used the Internet and other electronic facilities to carry out the scheme and conceal the ongoing fraudulent activities. Defendants also communicated by interstate telephone and interstate facsimile in furtherance of the scheme.

63. To achieve their common goals, Defendants hid from the general public the unlawfulness of TRUMP's conduct and Defendants suppressed and/or ignored warnings from third parties and counsel about his conduct.

64. Defendants' scheme and the above described racketeering activities amounted to a common course of conduct. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiff. Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to Plaintiff's property and rights.

65. Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section." Defendants have violated section 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the section 1962(c) Enterprise described previously through a pattern of racketeering activity.

66. The TRUMP ENTERPRISE so thwarted Plaintiff's ability to exercise his right to engage in a free political contest with TRUMP, that Plaintiff has lost hundreds of thousands of dollars attempting to pay the party fees, comply with their changing rules, obtain signatures from petitioners, and to engage lawyers and media professionals to comply with demands from State Parties, all of which were intended to result in loss to Plaintiff. These acts irrevocably damaged Plaintiff's campaign.

67. As the direct and proximate cause of Defendants' intentional and wrongful acts, Plaintiff suffered General and Special Damages in an amount to be

proven at trial, but no less than $1,000,000.

68. By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees.

**PRAYER FOR RELIEF**

Plaintiff respectfully prays for:

(a) General and special damages;

(b) Treble damages;

(c) Reasonable attorneys' fees and costs incurred in bringing this action; and

(d) Such other relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

DATED: December 15, 2019

Respectfully submitted,

/s/ Alicia I. Dearn
Alicia I. Dearn, Esq. (#MO0011)
231 S. Bemiston Avenue, Ste 850 #56306
Saint Louis, MO 63105
(314) 526-0040
(314) 526-0044 (facsimile)
notices@bellatrixlaw.com